ORIGINAL

# In the United States Court of Federal Claims
No. 17-1174T

**FILED**

(Filed: April 10, 2018)

**APR 1 0 2018**

U.S. COURT OF
FEDERAL CLAIMS

**********************************

| | | |
|---|---|---|
| **MOHAMAD E. TAHA, et al.,** | ) | Claims for tax refunds; tax paid on shareholder's portion of Subchapter S corporation's income that was reported but never received by shareholder; applicability of limitations periods on refund claims and suits; I.R.C. §§ 6511, 6532 |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**********************************

Ali M. Taha, *pro se,* Bradenton, FL, on behalf of Mohamad E. Taha, deceased, and Sanaa M. Yassin, *pro se,* United Arab Emirates.

Elizabeth A. Kanyer, Trial Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Richard E. Zuckerman, Principal Deputy Assistant Attorney General, Tax Division, and David I. Pincus, Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

### OPINION AND ORDER

LETTOW, Judge.

Plaintiffs, Mohamad Taha and Sanaa Yassin, acting through Ali M. Taha, designated under a power of attorney,[1] bring the instant suit against the United States for a tax refund arising out of shareholder dividends that allegedly were reported and taxed but never received. Plaintiffs' suit was ordered to be transferred to this court by the United States District Court for the Middle District of Florida. *See* District Court Transfer Order, No. 8:17-1094-T-33AAS

---

[1]Rule 83.1(a)(3) of the Rules of the United States Court of Federal Claims ("RCFC") provides that "[a]n individual who is not an attorney may represent oneself or a member of one's immediate family." The government does not contest Mr. Ali M. Taha's representation of Mr. Mohamad Taha and Ms. Yassin as one holding their power of attorney. *See* Def.'s Mot. to Dismiss ("Def.'s Mot.") at 3 & n.5, ECF No. 12 (noting that Mr. Ali M. Taha is the brother of Mr. Mohamad E. Taha).

(M.D. Fla. June 13, 2017), ECF No. 1.[2]  The resulting transfer complaint was filed in this court on September 18, 2017. *See* Compl. at 2, ECF No. 4.[3]

The crux of plaintiffs' complaint is that they paid taxes on shareholder income that, by virtue of the company becoming insolvent, they never received, and that the Internal Revenue Service ("IRS") wrongfully denied their request for a refund of the income taxes paid on their unpaid dividends. *See* Compl. ¶ 20.

The government has moved to dismiss the complaint, arguing that plaintiffs' refund claims were untimely, and thus this court lacks subject matter jurisdiction to consider those claims. *See generally* Def.'s Mot. Plaintiffs counter that their claims are timely because they are properly construed as claims for refund resulting from bad debts, and thus subject to a longer limitations period. *See* Compl. ¶¶ 20-21; Pls.' Obj. to Def.'s Mot. to Dismiss ("Pls.' Opp'n") at 2, 4, 19, ECF No. 15. The resulting issues have been fully briefed by the parties and are ready for decision.[4]

## BACKGROUND

Plaintiffs initially filed suit in the United States District Court for the Middle District of Florida seeking a refund of $14,177, representing the amount of income taxes paid in 2002 and 2003 for shareholder income that was reported but never actually received. *See* Compl. ¶ 20. Mr. Mohamad Taha was the owner of 10% of the stock of Atek Construction, Inc., a California corporation qualified under Subchapter S of the Internal Revenue Code, specifically 26 U.S.C. ("I.R.C.") § 1361. As a shareholder of such a corporation, income or loss on a *pro rata* pass-through basis based on that shareholding was reportable to the IRS for the pertinent year, whether or not that income was paid to the shareholder as a dividend or distribution. *See* I.R.C.

---

[2]The district court acted *sua sponte* to address its jurisdiction in light of the constraint imposed by 28 U.S.C. § 1402(a)(1). That statutory provision limits tax refund suits by individuals in district courts to "the judicial district where the plaintiff resides." *Id.* After inquiring of plaintiffs about their residency via orders to show cause, the district court concluded that plaintiffs did not reside in the United States, thus no district court would have jurisdiction over their suit for refund, and the only forum available to plaintiffs for their refund claim was this court, which has no residency limitation on its refund jurisdiction. *See* District Court Transfer Order, at 2-3 (citing *Williams v. United States*, 704 F.2d 1222, 1226 (11th Cir. 1983); *Krapf v. United States*, 604 F. Supp. 1164 (D. Del. 1985)).

[3]Because of the differing pagination of the plaintiffs' transfer complaint and its attachments, citation to those documents will be either to the page number of the document taken as a whole or to a particularly identified paragraph.

[4]Plaintiffs also filed a Motion to Deny or Strike Defendant's Reply in Support of Its Motion to Dismiss, ("Pls.' Mot. to Strike") ECF No. 17, which has also been the subject of briefing.

§ 1366(a).[5] Mr. Taha reported no other income. *See* Compl. at 5-7, 38-39, 44-45. This ownership interest resulted in a reported income for plaintiffs of $85,010 in 2002, and $77,813 in 2003. *See* Def.'s Mot. at 4-5. By 2004, plaintiffs assert that Atek had ceased operations and become insolvent, and, at that point, it was fixed and determinable that the previously reported shareholder income would not be paid. Of the reported amounts, only $20,000 had actually been paid to plaintiffs. *See, e.g.,* Compl. at 56 (Amended 2002 tax return showing that only $20,000 was received as shareholder income).

Plaintiffs filed their initial 2002 tax return on April 3, 2003, and their initial 2003 tax return on April 14, 2004, paying the taxes owed under those tax returns on the days the returns for those years were filed. Compl. ¶ 32. Plaintiffs allege that in 2004, Atek Construction "experienced financial difficulties and delays in timely receivables . . . [t]hat prompted and obligated two bonding insurance companies . . . to take over Atek's operation to complete Atek's projects, possess all it[s] records, and freeze all its assets and shareholders' assets." Compl. ¶ 15. Atek's financial difficulties resulted in no further payments to plaintiffs being made and caused them to file amended tax returns reducing the amount of income reported. Plaintiffs' amended 2002 and 2003 tax returns are both dated November 9, 2007. *See* Compl. at 56, 58. Nonetheless, the IRS' Certificates of Assessments, Payments, and Other Specified Matters appended as Exhibits 1 and 2 to defendant's motion to dismiss record the 2002 amended return as being filed on November 29, 2007, and do not record a 2003 amended return ever having been filed. *See* Def.'s Mot. Ex. 1, at 2, Ex. 2, at 2.

The IRS disallowed the refund request for 2002 on December 20, 2007. *See* Def.'s Mot. at 2. As plaintiffs acknowledge, the communications from the IRS discussed only the 2002

---

[5]Subsection 1366(a) provides, in pertinent part:

> (1). In general.—In determining the tax under this chapter of a shareholder for the shareholder's taxable year in which the taxable year of the S corporation ends[,] . . . there shall be taken into account the shareholder's pro rata share of the corporation's—
>> (A) items of income (including tax-exempt income), loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, and
>> (B) nonseparately computed income or loss.

I.R.C. § 1366(a)(1). The implementing Treasury Regulation elaborates:

> Shareholder's share of items of an S corporation.—(a) Determination of shareholder's tax liability.—(1) In general.—*An S corporation must report, and a shareholder is required to take into account in the shareholder's return, the shareholder's pro rata share, whether or not distributed, of the S corporation's items of income, loss, deduction, or credit* described in paragraphs (a)(2), (3), and (4) of this section[, providing for the separate statement of items].

26 C.F.R. ("Treas. Reg.") § 1.1366-1(a) (emphasis added).

3

refund claim, not the claim for a refund in 2003. *See* Compl. at 12. From 2007 to November 2009, plaintiffs had continued correspondence with various IRS processing centers regarding their attempts to receive a refund of taxes paid in 2002 and 2003. *See* Compl. at 12-15 (detailing plaintiffs' communications with the IRS).

Finally, plaintiffs attempted to claim a refund by filing an amended 2004 tax return on November 1, 2009. *See* Compl. at 15-16.[6] Plaintiffs assert that the 2004 filing is proper because Atek then became insolvent and was dissolved and thus the loss of shareholder income became "fixed and determinable" in that year. Compl. at 15 (emphasis omitted). Plaintiffs characterize the status of the shareholder income at that juncture as constituting a "bad debt" for purposes of retroactively calculating plaintiffs' tax liabilities for 2002 and 2003. This filing was also the subject of extensive correspondence between plaintiffs and various IRS service centers, running apparently from March 2011 to April 2017. *See* Compl. at 18-28 (listing communications). In all, the IRS issued at least seven letters officially denying plaintiffs' requested refund. As noted above, plaintiffs filed their suit in this case on May 10, 2017. The plaintiffs request a refund of $14,177, the amount of the taxes that plaintiffs allege were wrongfully paid and retained, plus interest and penalties and their costs in prosecuting this claim. *See* Compl. at 35-36.

## STANDARDS FOR DECISION

In ruling on a motion to dismiss for lack of subject matter jurisdiction, "the court [is] obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff[s'] favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (*citing Scheuer v. Rhodes*, 416 U.S. 232, 236-37 (1974); *Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564, 1568-69 (Fed. Cir. 1993)). Ultimately, "[i]f a court lacks jurisdiction to decide the merits of a case, dismissal is required as a matter of law." *Gray v. United States*, 69 Fed. Cl. 95, 98 (2005) (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed. Cir. 1985)); *see also* Rule 12(h)(3) of the Rules of the Court of Federal Claims ("If the court determines *at any time* that it lacks subject-matter jurisdiction, the court *must* dismiss the action.") (emphasis added).

The plaintiffs bear the burden of establishing jurisdiction, *see Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988), and the leniency afforded *pro se* litigants as to legal formalities does not extend to a lessening of the jurisdictional burden. *Kelley v. Secretary, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). In reviewing a claim for refund of taxes paid, this court has jurisdiction under the Tucker Act by virtue of the fact that "tax refund suits represent[ ] a category of case . . . 'where money or property has been paid or taken' and it is alleged that 'the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Hinck v. United States*, 64 Fed. Cl. 71, 75 (2005) (citing *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007

---

[6]Plaintiffs had not previously filed a tax return for 2004 as, in their words, "[p]laintiffs did not have income for 2004 . . . or any year after." Compl. at 15. In the course of their correspondence with the IRS regarding the filing of an amended 2004 tax return, plaintiffs eventually filed an initial 2004 tax return that they then sought to amend to secure the requested refund. Compl. at 16.

(1967)), *aff'd*, 446 F.3d 1307 (Fed. Cir. 2006), *aff'd*, 550 U.S. 501 (2007).  In such cases, this court's jurisdiction is shared with the district courts, which possess "jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected."  28 U.S.C. § 1346(a)(1).

The Internal Revenue Code mandates that certain requirements be satisfied before a plaintiff may bring suit for a refund of taxes paid.  *See* I.R.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.").  Pertinent here, the Internal Revenue Code sets forth two requirements that control the outcome of this case.

First, Section 6511 prescribes a limitation period for most refund claims, *i.e.*, a "[c]laim for credit or refund of an overpayment of any tax imposed by this title in respect of which the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later."  I.R.C. § 6511(a).  A longer limitation period is provided where certain types of bad debts are at issue: "If the claim for credit or refund relates to an overpayment of tax imposed by subtitle A [concerning income taxes] on account of . . . [t]he deductibility by the taxpayer, under section 166 [distinguishing between business bad debts and non-business bad debts for purposes of deductibility] . . . of a debt as a debt which became worthless . . . in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 7 years from the date prescribed by law for filing the return for the year with respect to which the claim is made." I.R.C. § 6511(d)(1); *see also* 26 C.F.R. § 301.6511(d)-1 (implementing Section 6511(d)(1)).[7]  In short, as relevant here, claims for refund arising out of *business* bad debts must be made within seven years of the filing deadline for the year at issue.  A claim for refund that is not prompted by a business bad debt must be made within three years of the filing deadline for the year at issue or two years of the actual payment of the taxes at issue, whichever is later.  The Supreme Court has explicitly concluded that these time limitations are not subject to extension on equitable grounds.  *United States v. Brockamp*, 519 U.S. 347, 352 (1997) ("Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate . . . that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote. There are no counterindications.  Tax law, after all, is not normally characterized by case-

---

[7]For corporate taxpayers, Section 166 permits the deduction of "any debt which becomes worthless within the taxable year."  I.R.C. § 166(a)(1).  "In the case of a taxpayer other than a corporation," non-business bad debt is not deductible in the same way as business bad debt, but rather is treated as a short-term capital loss, which may be deducted in limited amounts from income in the current year and carried forward to future taxable years, but may not be carried back to reduce taxable income in prior years.  *See* I.R.C. §§ 166(d)(1)(B); 172; 1211(b); 1212(b).  The Code defines a non-business debt as "a debt other than . . . a debt created or acquired . . . in connection with a trade or business of the taxpayer; or . . . a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."  I.R.C. §§ 166(d)(2)(A)-(B).

specific exceptions reflecting individualized equities."); *see also Cooper v. Commissioner of Internal Revenue*, 718 F.3d 216, 225 (3d Cir. 2013) (noting that Section 6511 has been amended since the Court's opinion in *Brockamp*, but that the reasoning is still sound).

Second, in addition to being required to file an administrative claim within a certain period of time, the ability to file suit relating to the refund claim is subject to separate time limits. I.R.C. § 6532 provides that "[n]o suit or proceeding under [S]ection 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates." I.R.C. § 6532(a)(1). The Code explicitly provides, further, that "[a]ny consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun." I.R.C. § 6532(a)(4). As with Section 6511, courts interpreting Section 6532 have applied *Brockamp* in concluding that there is no equitable exception to the statute of limitations contained there. *See, e.g., RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461-63 (Fed. Cir. 1998).

In sum, the provisions of the Code that prescribe time limits for bringing suit for a refund of taxes are conditions placed on the United States's waiver of sovereign immunity. "In the context of tax refund suits, the United States['] sovereign immunity is construed narrowly and jurisdiction of the Court of Federal Claims is limited by the Internal Revenue Code." *Waltner v. United States*, 679 F.3d 1329, 1332 (Fed. Cir. 2012); *see also United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008) ("A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action . . . [but t]he Internal Revenue Code specifies that before doing so, the taxpayer must comply with the tax refund scheme established in the Code.") (internal citations omitted).

## ANALYSIS

The statutory time constraints placed on a taxpayer's ability to seek a refund of taxes bear directly on the viability of plaintiffs' claims. Reduced to its most basic components, the law requires plaintiffs to have satisfied two requirements for their claims to properly be before this court. First, plaintiffs must have filed an administrative claim for a refund within the time prescribed by Section 6511. If, as they argue, the unrealized shareholder income is a business bad debt within the meaning of Section 166, they must have filed their refund claim within seven years of filing their initial tax returns. In contrast, if plaintiffs' bad debt argument is misplaced, they must have filed their refund claim within three years of filing their returns. Wholly apart from this requirement, however, plaintiffs must also have filed suit within two years from the date on which the IRS first denied their refund claim. If plaintiffs have not satisfied either component of the law's requirements, their claims fall outside the scope of the United States's waiver of sovereign immunity, and thus this court is without jurisdiction to hear their claim. *See Clintwood Elkhorn Mining Co.*, 553 U.S. at 4; *Waltner*, 679 F.3d at 1332.

Plaintiffs filed their 2002 tax return on April 3, 2003, and their 2003 tax return on April 14, 2004, paying the taxes due on the same days. *See* Compl. at ¶ 32.[8] Thus, by operation of law, they were required to file an administrative claim for a refund by April 15, 2006 and April 15, 2007, respectively. *See* I.R.C. § 6511(a). The IRS' records show plaintiffs' 2002 claim as filed on November 29, 2007, and do not reflect a claim ever being filed for 2003. Def.'s Mot. Ex. 1, at 2, Ex. 2, at 2. But even if the court adopts the date shown on plaintiffs' forms, November 9, 2007, *see* Compl. at 56, 58, plaintiffs' claims would still be untimely presented to the IRS under the generally applicable time bar.

Plaintiffs attempt to invoke the alternative limitations period relating to bad debts by asserting that the tax refund stems from "an overpayment of tax . . . on account of . . . the deductibility by the taxpayer, under [S]ection 166 . . . of a debt as a debt which became worthless." I.R.C. § 6511(d)(1)(A); *see* Compl. at 20-25. The United States points out that for taxpayers that are not corporations, under Section 166 of the Internal Revenue Code, a business bad debt is deductible from income in the pertinent year and may be carried back to previous years, but it limits a taxpayer who suffers a bad non-business debt to a short-term capital loss. *See* Def.'s Mot. at 10-11; *see also supra*, at 5 & n.7. The government submits that the plaintiffs' unpaid shareholder income does not qualify as business bad debt because plaintiffs "did not create the alleged debt in [their] trade or business . . . [and plaintiffs] do[ ] not have any other trades or businesses to which the alleged debt would proximately relate." Def.'s Mot. at 12. The government further asserts that "plaintiffs do not allege any facts tending to show that [plaintiffs'] alleged debt was business bad debt" and that "plaintiffs acknowledge that Mr. [Mohamad] Taha was a shareholder and had 'no role or responsibility in the operation of Atek.'" Def.'s Mot. at 13 (citing Compl. ¶¶ 10, 12).

The court first takes note of the fact that plaintiffs are proceeding *pro se* before the court, that they have specifically represented that they are unable to afford legal representation, and that "English is a second language" for them. Compl. at ¶¶ 5-6. Drawing inferences in plaintiffs'

---

[8]Plaintiffs also attempted to file an amended 2004 tax return on November 1, 2009. *See* Compl. at 16; *but see* Def.'s Mot. Ex. 3, at 2 (recording an initial filing of 2004 taxes on October 25, 2011, and an amended return filed on April 1, 2011). As defendants note, *see* Def.'s Mot. at 1-2 & n.1, plaintiffs' filings for the 2004 tax year were made to provide an alternative argument for their claimed 2002 and 2003 refunds. In any event, the court need not consider defendant's argument that, had plaintiffs' claim been allowed on their 2004 return, they would still not have been entitled to a refund because their claimed deduction was not subject to carryback. This is so because, even though "[Subsections] 6511(a) and 6511(b)(1) require only that a taxpayer bring a claim within three years of filing a return or two years of paying the tax, regardless of the return's actual due date," *Murdock v. United States*, 103 Fed. Cl. 389, 391 (2012) (citing *VanCanagan v. United States*, 231 F.3d 1349, 1351 (Fed. Cir. 2000)) (additional citations omitted), plaintiffs filed suit more than two years after the IRS first denied their claimed 2004 refund, *see* Def.'s Mot. Ex. 3, at 2 (first recording a disallowance of the 2004 refund claim on December 10, 2012); *see also* Compl. at 19 (reporting receipt of the disallowance on November 28, 2012). Notably also, Section 6511(b)(2) limits the *amount* of any refund that would be allowed to the amount of the tax paid within certain periods, and the taxes plaintiffs sought to have refunded were all paid outside that period. *See* I.R.C. § 6511(b)(2).

favor as the court is bound to do at this stage of the case, *see* Def.'s Mot. at 13 & n.9, the court declines to afford plaintiffs' statements as to the nature of their income the dispositive weight the government urges respecting any acknowledgement by plaintiffs that the Atek income does not relate to the plaintiffs' trade or business. In general terms, the plaintiffs assert that the Atek income was business income, and the Atek documents appended to plaintiffs' briefing could give rise to the inference that Atek was a family-run business, *see, e.g.*, Pls.' Opp'n at p. 33 of 56 (Bankruptcy Court Notice), pp. 51-52 of 56 (complaint filed by Hartford Fire Ins. Co.), pp. 54-56 of 56 (final judgment in suit by Hartford Fire Ins. Co.), but that Mr. Mohamad Taha and Ms. Sanaa Yassin had no direct role in the operation of Atek, *see, e.g.*, Compl. at 140-43 (listing the shareholders and officers of Atek). In short, and given the status of the record before the court at the pleading stage, plaintiffs may well have plausibly alleged that the unrealized shareholder income fits within the business bad debt provisions of Section 6511. Yet plaintiffs' claim must nevertheless fail because a more fundamental problem with their case deprives this court of jurisdiction to consider their bad-debt argument.

Plaintiffs' briefing places great emphasis on the business bad debt clause of Section 6511. *See, e.g.*, Compl. ¶¶ 20-25; Pls.' Opp'n at pp. 2-7 of 56. In making their arguments on this point, plaintiffs overlook the more fundamental problem with their case that results from the combined effect of Sections 6511 and 6532. While plaintiffs are correct that the Internal Revenue Code extends the time for filing an administrative refund claim to seven years in certain cases, and plaintiffs may well be correct that this is one of those cases, plaintiffs are still required to file suit over the allegedly erroneous denial of a claim for refund within two years of that denial. This deadline is wholly separate from the limitations period for filing a claim with the IRS, and it is not subject to extension. *See* I.R.C. § 6532(a)(1). Thus, even drawing all reasonable inferences in plaintiffs' favor as to the nature of their claimed deduction and the timeliness of their administrative claims to the IRS, the court still lacks jurisdiction to hear their claims because the IRS first denied their claim for refund on December 20, 2007, and plaintiffs did not file suit until May 10, 2017, almost ten years later. *See* Def.'s Mot. at 2, Ex. 2, at 2.

Indeed, Congress specifically provided for this type of situation when it provided that "[a]ny consideration, reconsideration, or action by the [IRS] with respect to such claim following the mailing of a notice . . . of disallowance *shall not operate to extend the period within which suit may be begun.*" I.R.C. § 6532(a)(4) (emphasis added). In short, notwithstanding an extensive history of correspondence between plaintiffs and the IRS, relocations from one IRS field office to another, and the extensions of time the IRS has requested from plaintiffs, the Supreme Court was explicit: "Congress did not intend courts to read . . . 'equitable' exceptions into the statute that it wrote . . . . Tax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities." *Brockamp*, 519 U.S. at 352. Even if plaintiffs' administrative claims were timely, they were required to file suit within two years of the IRS's first denial—by December 20, 2009—or their claims would be barred from this court's jurisdiction. Their suit was not timely filed, and thus this court is without jurisdiction to hear it.

8

## CONCLUSION

For the reasons stated, the court has no jurisdiction to consider the plaintiffs' claims, and thus the court GRANTS the defendant's motion to dismiss.[9] The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

_____
Charles F. Lettow
Judge

---

[9]Plaintiffs' Motion to Deny or Strike Defendant's Reply in Support of Its Motion to Dismiss is DENIED.