# In the United States Court of Federal Claims

No. 17-1174T

(Filed: April 1, 2020)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **ALI TAHA, on behalf of his deceased brother and his brother's wife,** ) ) ) ) Plaintiffs, ) ) v. ) ) **UNITED STATES,** ) ) Defendant. ) | Claim for tax refund; tax paid on shareholder's portion of Subchapter S corporation's income that was reported but never received by the shareholder; physical-delivery rule for refund claims; exceptions to that rule, 26 U.S.C. § 7502, not satisfied; seven-year period of limitation for business bad debt claims; 26 U.S.C. § 6511(d)(1) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Ali M. Taha, *pro se,* Bradenton, FL, on behalf of his deceased brother, Mohamad E. Taha, and his brother's wife, Sanaa M. Yassin, United Arab Emirates.

Elizabeth A. Kanyer, Trial Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Richard E. Zuckerman, Principal Deputy Assistant Attorney General, Tax Division, and David I. Pincus, Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Senior Judge.

Plaintiffs filed this action against the United States ("the government") seeking a refund of federal income taxes from the 2002, 2003, and 2004 tax years. Following dismissal by this court of plaintiffs' claims for lack of subject-matter jurisdiction and a subsequent decision by the United States Court of Appeals for the Federal Circuit affirming dismissal for tax years 2002 and 2004 and remanding respecting tax year 2003, at issue in this remand is plaintiffs' tax refund claim for the 2003 tax year. *See generally Taha v. United States*, 137 Fed. Cl. 462 (2018) ("*Taha I*"), *aff'd in part, vacated in part, and remanded*, 757 Fed. Appx. 947 (Fed. Cir. 2018) ("*Taha II*"). The Federal Circuit directed this court on remand to resolve three material factual disputes pertaining to plaintiffs' 2003 refund claim: (1) whether plaintiffs had properly filed a tax refund claim for tax year 2003, and if so, (2) whether this refund claim was timely, and (3) whether the IRS disallowed the 2003 claim. *Taha II*, 757 Fed. Appx. at 952. To address these issues, the court held a two-day trial in Tampa, Florida on December 9 and 10, 2019. Post-trial briefing was completed on March 23, 2020, and the case is now ready for disposition.

# FACTS[1]

Plaintiffs, Mohamad Taha and his wife, Sanaa Yassin, acting through Ali Taha as their representative, initially brought suit seeking a tax refund of $14,177 for federal income tax paid during the 2002 and 2003 tax years. *See generally* Transfer Complaint ("Compl."), ECF No. 4.[2] Plaintiffs' suit was first filed in the United States District Court for the Middle District of Florida in May 2017, but the District Court ordered that the case be transferred to this court because it lacked jurisdiction over plaintiffs' claims. *See* District Court Transfer Order, No. 8:17-1094-T-33AAS (M.D. Fla. June 13, 2017), ECF No. 1. The complaint was transferred on September 18, 2017. *See* Compl. On January 30, 2018, defendant filed a motion to dismiss all claims pursuant to RCFC 12(b)(1) and 12(b)(6), ECF No. 12, and this court granted the motion to dismiss on April 10, 2018, finding that it also lacked jurisdiction to hear plaintiffs' claims, *see Taha I*, 137 Fed. Cl. at 469.

The Federal Circuit affirmed-in-part, vacated-in-part, and remanded the case back to this court on December 14, 2018. *Taha II*, 757 Fed. Appx. at 954. In a *per curiam* decision, the Federal Circuit affirmed that this court lacked subject-matter jurisdiction over the 2002 and 2004 tax refund claims because plaintiffs "did not file their tax refund suit within the statutorily-prescribed two-year period from the date the [Internal Revenue Service ("IRS")] first mailed notices of disallowance for those claims." *Id.* at 951. The Federal Circuit, however, remanded the case to this court to make factual findings related to the 2003 tax refund claim. *Id.* at 954. This opinion addresses the remanded issues.

The 2003 tax refund claim stems from Mr. Mohamad Taha's shareholding in Atek Construction, Inc. ("Atek"). Atek was a Subchapter S Corporation formed in 1996 by Mr. Ali Taha and his nephew, Mr. Eyad Khalil. *See* Tr. 120:11-18; 121:6-8 (Test. of Ali Taha).[3] Atek

---

[1]The recitation of facts constitutes the court's principal findings of fact in accord with Rule 52(a) of the Rules of the Court of Federal Claims ("RCFC"). Other findings of fact and rulings on questions of mixed fact and law are set out in the analysis.

[2]Mr. Mohamad Taha passed away in 2007. *See* Pls.' Post-Trial Brief ("Pls.' Br.") at 1, ECF No. 81. The government argues that Mr. Ali Taha cannot serve as the representative for Mr. Mohamad Taha because Mr. Ali Taha has not demonstrated that he has been appointed as the personal representative or executor of Mr. Mohamad Taha's estate. Def.'s Post-Trial Brief. ("Def.'s Br.") at 39, ECF No. 85. The government is correct as to this point, *see* RCFC 17(a)(1), but because the court today finds that plaintiffs are not entitled to relief, this argument is moot. Further, the government does not "object to [Mr. Ali Taha's] representation of [Ms.] Yassin as to the full amount of the refund claim for tax year 2003" under RCFC 83.1(a)(3). *See* Def.'s Br. at 39 n. 23. That rule states that "[a]n individual who is not an attorney may represent oneself or a member of one's immediate family." RCFC 83.1(a)(3). Accordingly, Mr. Ali Taha may serve as Ms. Yassin's representative.

[3]The transcript of the trial will be cited as "Tr. [page]:[line]." Defendant's exhibits will be cited as "DX [Number] at [Page Number]." Plaintiffs' exhibits at trial were admitted in

2

was a construction company that bid on and completed work for various public projects, often working with subcontractors for these projects and obtaining bonds from surety companies for each project. *See* Tr. 125:21-25; 126:13-22 (Taha). When Atek was formed, Mr. Ali Taha and Mr. Khalil were equal owners, each with 50%. Tr. 121:6-11 (Taha). In 2002, following Mr. Mohamad Taha's arrival in the United States, Mr. Ali Taha gave ten percent of his shares to his brother, Mr. Mohamad Taha, to help him financially because he was unemployed. *See* Tr. 123:18 to 124:1; 132:1-3 (Taha). Mr. Mohamad Taha did not pay any money or perform any services for these shares. Tr. 124:16-21 (Taha). Mr. Ali Taha also gave five percent of his shares in Atek to another brother. Tr. 124:24 to 125:2 (Taha). Thus, by 2002, Atek was a family-owned company with four shareholders: Mr. Khalil with 50% percent, Mr. Ali Taha with 35%, Mr. Mohamad Taha with 10%, and Mr. Ali Taha's other brother with 5%. *See* Tr. 125:6-18 (Taha).

For tax years 2002 and 2003, Atek reported ordinary business income of $839,682 and $745,962 respectively. DX 9 at 1 (Atek's Form 1120S for 2002); DX 10 at 1 (Atek's Form 1120S for 2003). Because Atek was an S corporation, Atek's income was considered pass-through income, meaning its shareholders were required to report their *pro rata* share of Atek's income on their own individual income tax returns. *See* 26 U.S.C. § 1366. Therefore, Mr. Mohamad Taha reported income from Atek of $83,968 for tax year 2002 and $74,566 for tax year 2003. *See* PX B1 at 37 (Mr. Mohamad Taha's and Ms. Sanaa Yassin's Form 1040 for 2002); PX B2 at 43 (Mr. Mohamad Taha's and Ms. Sanaa Yassin's Form 1040 for 2003). Mr. Mohamad Taha and Ms. Yassin paid taxes on this income in the amount of $8,573 for 2002 and $5,604 for 2003. DX 1 at 2; DX 2 at 2. Plaintiffs in this case are seeking a refund for these taxes, totaling $14,177.[4]

While Mr. Mohamad Taha and Ms. Yassin paid taxes on this income, they never received distributions from Atek equal to the full amount they had to report as income; instead, Atek retained most of this money to sustain the company's operations. *See* Tr. 129:14-20 (Taha). By the end of 2003, plaintiffs had received only $20,000 in distributions from Atek. *See* Tr. 142:20-22 (Taha). For each of these two years, plaintiffs received a "promissory note" from Atek, drafted and signed by Mr. Ali Taha, that included Atek's promise to pay plaintiffs and listed the amount owed to plaintiffs from their profit distributions retained by Atek as well as an interest rate of 10% to be applied at some unspecified future date of payment. *See generally* PX C1 (2002 Promissory Note); PX C2 (2003 Promissory Note).[5]

---

subsections and were paginated as a single PDF document. As such, plaintiffs' exhibits will be cited as "PX [Letter][Subsection] at [PDF Page Number]."

[4]Because only plaintiffs' 2003 claim remains at issue, plaintiffs can only recover up to $5,604, the amount plaintiffs paid in income taxes for that year.

[5]The promissory note for 2002 listed the amount owed to plaintiff Mohamad Taha as being the full amount plaintiffs claimed for their income in their 2002 individual income tax return, $84,935. This is not the correct amount, however, because plaintiffs received $20,000 in distributions from Atek. Thus, the amount owed to plaintiffs for 2002 should be reduced by

3

In the fall of 2004, Atek experienced financial difficulties due to lack of payments from various project owners for whom Atek worked. Tr. 16:17-19 (Taha). Atek's creditors sought payment from Atek, and when Atek was unable to make these payments, the creditors then sought payment from the bonding companies securing Atek's various projects. *See* Tr. 16:19-21 (Taha). The bonding companies immediately took over the operations of Atek and filed lawsuits against Atek and its primary shareholders. Tr. 16:22-25 (Taha). In at least one lawsuit, the court entered judgment in favor of the bonding company against Atek. *See generally* DX 26. Because Mr. Mohamad Taha had not received any payments regarding the undistributed income, he later sought to recover his undistributed amounts via a bankruptcy action that had been brought by Mr. Khalil, another shareholder, in 2006. *See* PX H2 at 92. Mr. Mohamad Taha was unsuccessful in his claim for payment because the bankruptcy court found that there were insufficient funds to distribute to creditors. *See id.* Therefore, Mr. Mohamad Taha was never paid the retained shareholder distributions.

Mr. Ali Taha helped Mr. Mohamad Taha and Ms. Yassin prepare both of their original income tax forms, Form 1040, for 2002 and 2003, and additionally helped to prepare their amended income tax forms for 2002 and 2003, Form 1040X. *See* Tr. 57:19-20; 58:25 to 59:1; 78:20-25 (Taha). On plaintiffs' amended tax return for 2003, plaintiffs claimed they were owed a refund of $5,604 for "[i]ncome from Schedule K-1 as shown on Schedule E not collected – loss because Atek Construction ceased business." PX G2 at 80-81. Plaintiffs made a similar refund claim in their 2002 amended tax return. *See* PX G1 at 78-79. On November 9, 2007, Ms. Yassin signed both the Form 1040X for tax year 2002 and Form 1040X for tax year 2003. PX G1 at 78; PX G2 at 80. Mr. Ali Taha testified that "both [the] 2002 and 2003 [amended returns] were filed simultaneously. . . and taken to the post office either by myself or my – whoever at the time, most likely myself, because plaintiffs didn't have transportation, [and] they didn't know where the post office [wa]s." Tr. 79:8-15 (Taha). The IRS received plaintiffs' Form 1040X for tax year 2002 on November 29, 2007, *see* DX 1 at 2, but the IRS's records do not reflect ever having received plaintiffs' Form 1040X for tax year 2003, *see* DX 2 at 2.

Mr. Taha recalls that based on his experience, the amended returns for each year were likely mailed in separate envelopes, but he could not testify affirmatively how the 2002 and 2003 returns specifically were mailed. *See* Tr. 79:21-25 (Taha). Because the IRS's records do not reflect ever having received the 2003 amended 1040X, the IRS never disallowed this refund claim.[6] Following a series of letters exchanged between plaintiffs and the IRS after the IRS disallowed plaintiffs' 2002 claim, *see generally* PX H1; PX H2; PX I1; PX I2, plaintiffs filed this suit.

---

$20,000, to $64,935. Mr. Ali Taha testified that he was aware of this error, but simply never revised the promissory note. *See* Tr. 143:14-21 (Taha).

[6] While the Federal Circuit in its opinion identified the issue of whether the IRS disallowed the refund claim for 2003 as a dispute for this court to resolve, the government does not contend that the claim was ever disallowed. *See* Def.'s Br. at 2.

4

# STANDARDS FOR DECISION

## A. *Jurisdiction in Tax Refund Suits*

Pursuant to the Tucker Act, this court has jurisdiction over claims seeking recovery of an internal revenue tax alleged to have been erroneously or illegally assessed or collected. *See, e.g., Hinck v. United States*, 64 Fed. Cl. 71, 75 (2005), *aff'd*, 446 F.3d 1307 (Fed. Cir. 2006), *aff'd*, 550 U.S. 501 (2007). This court's jurisdiction over these cases runs concurrently with that of district courts. *See* 28 U.S.C. § 1346(a)(1). The Internal Revenue Code (the "Code") dictates that a plaintiff must satisfy additional prerequisites to establish this court's jurisdiction in these types of cases. Primarily, before a plaintiff can bring a tax refund suit, a claim must first be filed with the IRS in accord with relevant statutory and regulatory provisions set out in the Code. *See* 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.").[7]

Most relevant here are provisions of the Code regarding the timing of refund claims. I.R.C. § 6511 prescribes the main timing limitations for most refund claims. Under Subsection 6511(a), for taxes for which the taxpayer is required to file a return, a "[c]laim for credit or refund of an overpayment of any tax . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." When the refund claim involves bad debts or worthless securities, the limitation period for making a claim is longer. For these types of claims, *i.e.*, claims relating to debt that became worthless under I.R.C. § 166 or § 832(c) or losses from worthlessness of a security under I.R.C. § 165(g), the period for filing a refund claim "shall be 7 years from the date prescribed by law for filing the return for the year with respect to which the claim is made." *See* I.R.C. § 6511(d)(1). These timing limitations cannot be extended on equitable grounds. *See Taha I*, 137 Fed. Cl. at 466 (citing *United States v. Brockamp*, 519 U.S. 347, 352 (1997); *Cooper v. Commissioner*, 718 F.3d 216, 225 (3d Cir. 2013)).

## B. *Business Bad Debt and Section 6511*

For an individual taxpayer to receive the benefit of the extended refund filing period under Subsection 6511(d) for bad debt, the taxpayer must prove that the deduction is appropriate under I.R.C. § 166. Subsection 166(a) allows a deduction of "any debt which becomes worthless in the taxable year." I.R.C. § 166(a)(1). The Tax Code itself and Treasury Regulations further define the qualifications for this deduction. First, "only a bona fide debt qualifies for purposes of section 166," Treas. Reg. § 1.166-1(c), and "[a] bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money," *id.* Second, Paragraph 166(d)(1)(A) explains that for a taxpayer other than a corporation, this deduction does not apply to "nonbusiness debt." I.R.C. §

---

[7]Future references to the Internal Revenue Code will be to "I.R.C." rather than to "26 U.S.C."

5

166(d)(1)(A). Nonbusiness debt is defined in the Code as "a debt other than . . . a debt created or acquired . . . in connection with a trade or business of the taxpayer; or . . . a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." I.R.C. §§ 166(d)(2)(A)-(B). Lastly, as implicated by the text of the statute, the taxpayer must show that the debt is "worthless" and identify the taxable year in which it became worthless. See I.R.C. § 166(a)(1).

## ANALYSIS

### A. Filing of the 2003 Amended Tax Return

At issue initially on remand is whether plaintiffs filed their 2003 amended tax return. Plaintiffs argue that they did so, and to support this allegation, plaintiffs presented testimony regarding circumstantial evidence of mailing, see, e.g., Tr. 79:8 to 80:2, as well as a copy of the original 2003 Form 1040X they allege they filed, see PX G2. In response, the government presented IRS records of plaintiffs' filings, see DX 2, which do not reflect the IRS ever having received plaintiffs' 2003 Form 1040X, and the government asserts that these records are "presumed to be true, accurate, and correct," Def.'s Br. at 15 (quoting *Ishler v. United States*, 115 Fed. Cl. 530, 537-38 (2014); *Harris v. United States*, 44 Fed. Cl. 678, 682, aff'd, 232 F.3d 912 (Fed Cir. 2000)). Additionally, the government contends that plaintiffs have failed to demonstrate compliance with the "physical-delivery rule," and that the only exceptions to this rule, I.R.C. § 7502, do not apply to plaintiffs' 2003 amended return. Def.'s Br. at 14-16. The government's arguments are persuasive. Plaintiffs here cannot demonstrate that they filed an amended tax return Form 1040X for 2003, and thus plaintiffs have not satisfied their burden of establishing this court's jurisdiction in light of I.R.C. § 7422.

The physical-delivery rule is a well-established tenet of tax law—a document is not considered as filed until it is actually delivered to the IRS. See Treas. Reg. § 301.7502-1(e)(2); see also *Miller v. United States*, 784 F.2d 728, 730 (6th Cir. 1986) (quoting *United States v. Lombardo*, 241 U.S. 73, 76 (1916)). To account for vagaries of the postal service and to mitigate the harshness of the physical-delivery rule, some courts, decades ago, began to apply the "common-law mailbox rule," see *Baldwin v. United States*, 921 F.3d 836, 839-40 (9th Cir. 2019), cert. denied, 589 U.S. ___, 140 S. Ct. 690 (2020), that is, "the judicially-created presumption that material mailed is material received," *Miller*, 784 F.2d at 730. "Under the common-law mailbox rule, proof of proper mailing—including by testimonial or circumstantial evidence—gives rise to a rebuttable presumption that the document was physically delivered to the addressee in the time such a mailing would ordinarily take to arrive." *Baldwin*, 921 F.3d at 840.

Congress addressed the issue in 1954 when it passed I.R.C. § 7502, creating an exception to the physical-delivery rule for documents delivered by U.S. mail. See id. Under Paragraph 7502(a)(1), a claim is considered filed on its date of postmark, even if it is received by the IRS after the applicable deadline. This exception, however, expressly contemplates the document's eventual receipt by the IRS. See I.R.C. § 7502 (a)(1). Thus, to account for situations where the document is never received, Section 7502 also contains additional exceptions to the physical-

6

delivery rule for those documents mailed via registered or certified mail. *See* I.R.C. § 7502(c).[8] Subsection (c) specifically provides that for documents sent by registered mail, "such registration shall be prima facie evidence that the . . . document was delivered to the agency." I.R.C. § 7502(c)(1)(A).

Following the passage of Section 7502, "courts of appeals reached conflicting decisions as to what effect, if any, the statute had on application of the common-law mailbox rule." *See Baldwin*, 921 F.3d at 841 (collecting cases from varying circuits interpreting Section 7502). Decisions from this court, though, have long held that the common-law mailbox rule no longer applies and that Section 7502 provides the exclusive exceptions to the physical-delivery rule. *See, e.g., Davis v. United States*, 43 Fed. Cl. 92, 94 n.4 (1999), *aff'd*, 2000 WL 194111 (Fed. Cir. Feb. 16, 2000) (citing *Ygnatowiz v. United States*, 1997 WL 625502, at *4 n.8 (Fed. Cl. Aug. 5, 1997), *McIlvaine v. United States*, 23 Cl. Ct. 439, 442 (1991), and *Favell v. United States*, 22 Cl. Ct. 571, 576 (1991), among others). Seeking to clarify the confusion caused by the circuit split, the Treasury Department amended its regulation interpreting Section 7502 to make explicit that taxpayers can no longer turn to the common-law mailbox rule for relief. *See* TD 9543, 76 Fed. Reg. 52561-01 (Aug. 23, 2011), 2011 WL 3664239, 2011-40 I.R.B. 470. The regulation provides that, for all documents mailed after September 21, 2004, the exceptions under Section 7502 are the sole exceptions to the physical-delivery rule—"No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered." Treas. Reg. §§ 301.7502-1(e)(2)(i), (g)(4).

In the Federal Circuit's decision on appeal in this case, the court cited to *Jones v. United States*, 226 F.2d 24, 27 (9th Cir. 1955), for the proposition that plaintiffs here "may be able to show that the claim was timely mailed." *Taha II*, 757 Fed. Appx. at 952 n.3. While *Jones* has not been explicitly overruled, and remains only persuasive authority to this court, the Ninth Circuit recently reconsidered the holding of *Jones* in *Baldwin*, evaluating the effect of the Treas. Reg. § 301.7502-1(e)(2)(i). In *Baldwin*, the Ninth Circuit effectively overturned the holding in *Jones*, applying *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and *National Cable & Telecomms. Assoc. v. Brand X Internet Servs.*, 545 U.S. 967 (2005), and concluding that Treas. Reg. § 301.7502-1(e)(2) is valid and a "reasonable interpretation of the governing statute[, I.R.C. § 7502]." 921 F.3d at 843.

Given these precedents, the court is left with little room for digression. For plaintiffs' 2003 amended tax return Form 1040X to be considered filed, plaintiffs must be able to show that the form was actually delivered to the IRS or that they otherwise met the requirements of I.R.C. § 7502. The IRS's records for Mr. Mohamad Taha and Ms. Sanaa Yassin for 2003, presumed to be accurate, do not reflect that the IRS ever received plaintiffs' 2003 Form 1040X. *See* DX 2. Plaintiffs have not provided evidence that the form was mailed by registered or certified mail, or that they meet any of the stated exceptions of Section 7502. Plaintiffs instead urge the court to look to their testimonial evidence of mailing, *see* Pls.' Br. at 31, but the court is foreclosed from applying the common-law mailbox rule, considering the language of Treas. Reg. § 301.7502-

---

[8] Section 7502 includes other exceptions to the physical delivery-rule, including for example, for documents mailed with private delivery services. *See, e.g.,* I.R.C. § 7502(f). These exceptions are not potentially applicable to this case and therefore are not addressed.

1(e)(2). Absent the requisite evidence showing that they fall within the exceptions of Section 7502, plaintiffs cannot show that they filed a claim for refund with the IRS as required for jurisdiction in this court pursuant to I.R.C. § 7422. Therefore, the court does not have subject-matter jurisdiction over plaintiffs' 2003 tax refund claim.

### B. Inapplicability of a Business Bad Debt Claim

Even if plaintiffs could show that they filed their 2003 amended tax return, plaintiffs still would have the burden of showing that this filing was timely. It is likely that plaintiffs' 2003 amended tax return would have been received by the IRS around the same time their 2002 amended tax return was received, if they were indeed mailed at the same time. Plaintiffs' 2002 amended tax return was received, according to the official IRS record, on November 29, 2007. *See* DX 1 at 2. Thus, assuming that plaintiffs' 2003 claim would have been received around this same time, it would have been untimely because it would have been received well beyond the three-year limitation of I.R.C. § 6511(a).

Plaintiffs contend that I.R.C. § 6511(a) is inapplicable and instead submit that their claim for refund is timely because it falls within the seven-year period of limitation for business bad debts under I.R.C. § 6511(d)(1). Pls.' Br. at 11. The government counters that plaintiffs are not entitled to the extended period of limitation for bad debts because plaintiffs "cannot demonstrate that the taxed but undistributed S corporation shareholder income is debt, that the purported debt is business debt, or that purported debt became worthless in tax year 2004," Def.'s Br. at 25 (emphasis omitted), as required under I.R.C. §§ 166, 6511(d).

Plaintiffs have not met their burden of proving they are entitled to the seven-year limitation period. Section 166 defines bad debt for the purposes of the extended limitation period of Section 6511. Under Section 166, plaintiffs must show that the money at issue is a bona fide debt. Treas. Reg. § 1.166-1(c). But plaintiffs' *pro rata* share of Atek's income is capital, not debt. "A gift or *contribution to capital* shall not be considered a debt for purposes of section 166." *Id.* (emphasis added); *accord Cenex, Inc. v. United States*, 156 F.3d 1377, 1381 (Fed. Cir. 1998). The money at issue was Mr. Mohamad Taha's earned pass-through income from his *pro rata* shares in Atek. That Mr. Mohamad Taha's earnings were proportional to his ownership share suggests that this money was capital, not debt. *See Cenex*, 156 F.3d at 1382 (citing *Bordo Product Co. v. United States*, 476 F.2d 1312, 1324 (Ct. Cl. 1973)). Further, traditional indicia of debt, *viz.*, calculated interest and a payment schedule, are not present in the transaction at issue, again suggesting that this money was a capital contribution, not debt. *See id.* (citation omitted).

Additionally, assuming plaintiffs could show that this equity was debt as contrasted to capital, plaintiffs would be unable to show that this money is business debt, as required for non-corporate taxpayers. *See* I.R.C. § 166(d). Plaintiffs here cannot show that Mr. Mohamad Taha's debt was proximately related to his trade or business, *see* Treas. Reg. § 1.166-5(b)(2), as they cannot show that Mr. Mohamad Taha was engaged in the trade or business of Atek. Simply put, Mr. Mohamad Taha performed no services for Atek. Thus, Mr. Mohamad Taha cannot be considered as engaging in this activity with "continuity and regularity" or that his "primary purpose for engaging in the activity [was] for income or profit." *Commissioner v. Groetzinger*,

480 U.S. 23, 35 (1987). Mr. Mohamad Taha's role as only a shareholder makes his interest non-business for purposes of Section 166. *See Whipple v. Commissioner*, 373 U.S. 193, 202 (1963).

Because plaintiffs are unable to show that the money at issue is debt and that it is specifically business debt, they cannot meet the requirements of Section 166 and thus are not entitled to the extended seven-year limitations period provided by Subsection 6511(d). Therefore, plaintiffs' 2003 amended tax return, if considered filed, would be untimely.

## CONCLUSION

For the reasons stated, plaintiffs are unable to meet their burden to show that this court has jurisdiction over their 2003 tax refund claim. Consequently, plaintiffs' claim shall be DISMISSED for lack of subject-matter jurisdiction. The clerk is directed to enter judgment accordingly.

No costs.

It is so **ORDERED**.

_____
Charles F. Lettow
Senior Judge

9